IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIMO DUVNJAK,<br><br>        Plaintiff,<br><br>v.<br><br><br><br>MYLAN N.V., HEATHER BRESCH, ROBERT J. CINDRICH, ROBERT J. COURY, JOELLEN LYONS DILLON, NEIL DIMICK, MELINA HIGGINS, HARRY A. KORMAN, RAJIV MALIK, RICHARD MARK, MARK W. PARRISH, RANDALL L. VANDERVEEN, PAULINE VAN DER MEER MOHR, SJOERD S. VOLLEBREGT,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Simo Duvnjak ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Mylan N.V. ("Mylan" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the

Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Mylan and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Mylan and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the business combination of the Company with Pfizer Inc. ("Pfizer"), Upjohn Inc. ("Newco"), Utah Acquisition Sub Inc. ("Newco Sub"), Mylan I B.V. ("Mylan Newco"), and Mylan II B.V. ("Myland Newco Sub") (the "Proposed Transaction").

2. On July 29, 2019, the Company entered into a Business Comination Agreement (the "Agreement"), pursuant to which Newco and Mylan will combine their businesses and the Company's shareholders will receive one share of Newco common stock for each ordinary share of Mylan owned. Following the consummation of the Proposed Transaction, Mylan stockhodlers will hold 43% of Newco common stock.

3. On February 13, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Mylan and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Mylan

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company's stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, an ordinary shareholder of Mylan.

9. Defendant Mylan is incorporated under the laws of the Netherlands. The Company's ordinary shares trade on the NASDAQ under the symbol "MYL."

3

10. Defendant Heather Bresch ("Bresch") is and has been Mylan's Chief Executive Officver and a member of the Company's Board at all times during the relevant time period.

11. Defendant Robert J. Cindrich ("Cindrich") is and has been a director of Mylan at all times during the relevant time period.

12. Defendant Robert J. Coury ("Coury") is and has been the Chairman of the Company's Board at all times during the relevant time period.

13. Defendant JoEllen Lyons Dillion ("Dillion") is and has been a director of Mylan at all times during the relevant time period.

14. Defendant Neil Dimick ("Dimick") is and has been a director of Mylan at all times during the relevant time period.

15. Defendant Melina Higgins ("Higgins") is and has been a director of Mylan at all times during the relevant time period.

16. Defendant Harry A. Korman ("Korman") is and has been a director of Mylan at all times during the relevant time period.

17. Defendant Rajiv Malik ("Malik") is and has been a director of Mylan at all times during the relevant time period.

18. Defendant Richard Mark ("Mark") is and has been a director of Mylan at all times during the relevant time period.

19. Defendant Mark W. Parrish ("Parrish") is and has been a director of Mylan at all times during the relevant time period.

20. Defendant Randall L. Vanderveen ("Vanderveen") is and has been a director of Mylan at all times during the relevant time period.

21. Defendant Pauline van der Meer Mohr ("Mohr") is and has been a director of Mylan at all times during the relevant time period.

22. Defendant Sjoerd S. Vollebregt ("Vollebregt") is and has been a director of Mylan at all times during the relevant time period.

23. Defendants Bresch, Cindrich, Coury, Dillion, Dimick, Higgins, Korman, Malik, Mark, Parrish, Vanderveen, Mohr, and Vollebregt are collectively referred to herein as the "Individual Defendants."

24. The Individual Defendants, along with Defendant Mylan, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25. Mylan, along with its subsidiaries, is a global pharmaceutical company that purports to provide 7 billion people access to high quality medicine. The Company offers a portfolio of more than 7,500 marketed products around the world, including prescription generic, branded generic, brand-name and biosimilar drugs and over-the-counter remedies.

26. Mylan offers a wide range of antiretroviral therapies, upon which approximately 40% of HIV/AIDS patients depend globally. Mylan markets its products in more than 165 countries and territories.

### The Company Announces the Proposed Transaction

27. On July 29, 2019, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> HERTFORDSHIRE, England and PITTSBURGH and NEW YORK, July 29, 2019 /PRNewswire/ -- Mylan N.V. (Nasdaq: MYL) and Pfizer Inc. (NYSE: PFE) today announced a definitive agreement to combine Mylan with Upjohn, Pfizer's off-patent branded and generic established medicines business, creating a new

5

global pharmaceutical company. Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, each Mylan share would be converted into one share of the new company. Pfizer shareholders would own 57% of the combined new company, and Mylan shareholders would own 43%. The Boards of Directors of both Mylan and Pfizer have unanimously approved the transaction.

The new company will transform and accelerate each businesses' ability to serve patients' needs and expand their capabilities across more than 165 markets by bringing together two highly complementary businesses. Mylan brings a diverse portfolio across many geographies and key therapeutic areas, such as central nervous system and anesthesia, infectious disease and cardiovascular, as well as a robust pipeline, high-quality manufacturing and supply chain excellence. Upjohn brings trusted, iconic brands, such as Lipitor (atorvastatin calcium), Celebrex (celecoxib) and Viagra (sildenafil), and proven commercialization capabilities, including leadership positions in China and other emerging markets.

The transaction will allow the new company to meaningfully expand the geographic reach of Mylan's existing broad product portfolio and future pipeline – including significant investments that have been made across complex generics and biosimilars – into new growth markets where Upjohn has existing sales infrastructure and local market expertise.

The combination will drive a sustainable, diverse and differentiated portfolio of prescription medicines, complex generics, over-the-counter products and biosimilars supported by commercial and regulatory expertise, established infrastructure, best-in-class R&D capabilities and high-quality manufacturing and supply chain excellence.

*       *       *

**Transaction Highlights**
The combination will be effected through a Reverse Morris Trust, under which Upjohn is expected to be spun off or split off to Pfizer's shareholders and simultaneously combined with Mylan. The transaction is expected to be tax free to Pfizer and Pfizer shareholders and taxable to Mylan shareholders. The transaction is anticipated to close in mid-2020, subject to approval by Mylan shareholders and customary closing conditions, including receipt of regulatory approvals. No vote is required by Pfizer shareholders. Upjohn will issue $12 billion of debt at or prior to separation, with gross debt proceeds retained by Pfizer. Upon closing, the new company is expected to have a solid investment grade credit rating. The new company will have approximately $24.5 billion of total debt outstanding at closing.

Centerview Partners LLC and PJT Partners LP are serving as Mylan's financial advisors, and Cravath, Swaine & Moore LLP and NautaDutilh are serving as legal

counsel to Mylan. Goldman, Sachs & Co. LLC and Guggenheim Securities, LLC are serving as Pfizer's financial advisors for the transaction. Wachtell, Lipton, Rosen & Katz, and De Brauw Blackstone Westbroek are acting as Pfizer's legal counsel and Davis Polk and Wardwell LLP is serving as its special tax counsel.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

28. On February 13, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

29. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Management's Financial Projections

30. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

31. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections. Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy. One of the new C&DIs regarding

7

forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

32. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

33. Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

34. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Centerview and PJT's Financial Opinion

35. The Proxy Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") and PJT Partners LP ("PJT," and along with Centerview, the "Financial Advisors") concerning the Proposed Transaction, but fails to provide material information concerning such.

36. With respect to the Financial Advisors' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate unlevered free cash flow; (ii) the terminal values of both the Company and the Upjohn Business; (iii) the basis for the Financial Advisors' selection of a range of exit multiples of 6.5x to 7.5x; and (iv) the individual inputs and assumptions underlying the Financial Advisors' selection of the range of discount rates of 8.0% to 10.0%.

37. With respect to the Financial Advisors' *Selected Public Comparable Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by the Financial Advisors in their analysis.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Potential Conflicts of Interest

40. The Proxy Statement omits material information concerning potential conflicts of interest involving PJT.

41. For instance, the Proxy Statement notes that PJT "has received and will receive customary compensation" for services provided to Myland and Pfizer. However, the Proxy Statement fails to disclose the amount of compensation PJT has received or expects to receive for rendering such services.

42. Full disclosure of this information is material to the Company's shareholders in order for them to make a fully informed decision upon voting.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Mylan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Mylan, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 6, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*